UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
BRUCE CYPHERS, and DONNA CYPHERS

      Plaintiffs

-against-

LITTON LOAN SERVICING LLP, and
CARUS & MANNIELLO, P.C., and
CGA PROPERTIES, LLC

      Defendants
_____

Verified Complaint
No:_____

**06 -CV- 0067**
**DNH / RFT**

*U.S. DISTRICT COURT*
*N.D. OF N.Y.*
*FILED*
*JAN 1 8 2006*
*LAWRENCE K. BAERMAN, CLERK*
*ALBANY*

## JURISDICTION

1. Jurisdiction is conferred on this court by the Fair Debt Collections Act 15 U.S.C. §1692 (k)(d) (2005).

   Jurisdiction is conferred on this court by the Truth In Lending Act 15 U.S.C. § 1640(e) (2005).

## PARTIES

2. Plaintiffs: Bruce Cyphers and Donna Cyphers
   Address: 104 McNutt Ave.
       Colonie, NY 12205

3. Defendant: Litton Loan Servicing LP
       4828 Loop Central Drive
       Houston, TX 77081 (Litton)

4. Defendant: Carus & Manniello, P.C.
       115 Eileen Way – Ste 103
       Syosset, NY 11791-9021 (Carus)

5. Defendant: CGA Properties, LLC
       839 Eastern Ave
       Schenectady, NY 12303 (CGA)

## STATEMENT OF FACTS

1

6. The Plaintiffs were unrepresented first time homebuyers. On or about June 4, 2002, Plaintiff Donna Cyphers contracted with seller and lender, Defendant CGA Properties, LLC (herein after CGA) to purchase residential real property located at 104 McNutt St. Colonie, NY 12205 for the amount of $85,500.00.

7. On or about November 6, 2002, both Plaintiffs signed a second real estate contract prepared by CGA as the seller, to purchase the above-mentioned property for $95,000.00 to be secured by a second mortgage of $9,500.00 to be held by CGA.

8. On or about February 22, 2003, at the real estate sale closing on the subject property, CGA Properties and/or its agents presented a first purchase money note and mortgage with Freemont Investment and Loan as mortgagees and created an undisclosed and unrecorded second real estate note and mortgage for the benefit of the seller, CGA in the amount of $19,000.00. No copies of these second note and mortgage papers were given to the Plaintiffs at the closing or thereafter until December of 2005. No complete information was ever provided to the Plaintiffs about any of the financed terms or costs of this unrecorded second real estate note and mortgage.

9. In accordance to the advice given by CGA, CGA's agents, and CGA's attorney, the Plaintiffs did not retain an attorney to assist or advise Plaintiffs in regard to this real estate closing and the two related loans. Plaintiffs were advised at the closing by CGA, CGA's agents and CGA's attorney, that as was customary in the trade, the second note and mortgage was created in order to obtain funding from the initial mortgage lender Freemont Investment & Loan (hereinafter Freemont), and that the second note and mortgage would be released without payment once the funds for the first mortgage were procured.

10. To this date, no payment has been demanded by CGA on the second note and mortgage and the second note and mortgage has not been released satisfied or discharged.

11. Plaintiffs were aware that a second note and mortgage might have been signed and attempted to get information about the existence and possible release from this second note and mortgage by contacting CGA directly numerous times. Each time Plaintiffs contacted CGA, CGA's office manager "Ms. Marty Pollosio" [sic] acknowledged the existence of the second note and mortgage and promised to send verification of the existence and release of the note and mortgage. However, neither verification nor release papers were ever sent. Plaintiffs, about six months after closing, and while grocery shopping, met the attorney from the Hoffman Law Firm, Pamela M. McDevitt, ("Ms. McDevitt") who represented Defendant CGA at the said closing. Ms. McDevitt promised to get the verification and release of the second note and mortgage. No response was ever received by Plaintiffs following Plaintiff's inquiries to CGA or their attorneys.

12. On or about November 1, 2005, Plaintiff's attorney requested in writing (from CGA) all documents relating to the two notes and mortgages created in said transaction. No response was ever provided to this letter. Plaintiff's attorney procured, from CGA's attorney, a copy of the unsatisfied second note and mortgage papers on November 15, 2005 for the first time.

13. Defendant CGA's attempt to conceal proof of the existence of this second mortgage constitutes a fraudulent concealment thus delaying the running of the statute of

limitations under 15 U.S.C. § 1640(e) (2005). <u>Atlantic City Elec. Co. v. General Elec. Co.</u>, 312 F.2d 236, 239 (2d Cir.1962)

14. Defendant CGA Properties did not provide a clear and conspicuous Truth in Lending Act (TILA) disclosure of any of the terms of the second note and mortgage allegedly owed by Plaintiffs as required by TILA in Consumer Leasing Act Section 213.3.

15. Included as part of the $ 95,000.00 amount financed for the purchase price paid by the plaintiff's were the following charges:

    a. $ 74.28 Recording fee for the second note and mortgage.

    b. $385.00 Albany County Clerk.

16. The note and first mortgage in this matter, secured by Freemont were based upon a loan amount of $76,000.00 to be paid by subsequent monthly installments of $627.00, payable on the first day of each month for a term of 360 months.

17. Plaintiffs made timely payments on the note and mortgage when on or about October 2004, Plaintiffs attempted to pay property taxes on their home before the date that the taxes were due and were informed by local municipalities taxing authorities that Litton had already proactively paid the taxes.

18. Plaintiffs were contacted by Litton shortly after Plaintiffs' discovery of the payment by Litton of their taxes and were told by Litton that Plaintiffs' mortgage payment was going to be increased as a result of the tax payment made by Litton. Plaintiffs were told by Litton's agent Minnie Rodriguez not to pay until they received a Stipulation Agreement, which included a bill for the increase.

19. Plaintiffs were issued a written Stipulation Agreement from Litton's Law Firm Carus and Manniello P.C. (hereinafter Carus) informing Plaintiffs of an increase in loan

payments, which stipulation was signed by the Plaintiffs without the benefit of legal counsel. This stipulation increased payments to $1150.30 to be made monthly on the 25th day of each month.

20. Said written communication failed to comply with the Fair Debt Collections Practices Act, was confusing and/or was meant to mislead the Plaintiffs. Said communication including the aforementioned Stipulation Agreement and accompanying cover letter wholly failed to comply with the Fair Debt Collections Practices act and represented that "This is the only stipulation agreement and the foreclosure action will continue unless and until the signed stipulation agreement and required deposit is received by Litton Loan Servicing, LP." According to the aforementioned written communication, the mortgage loan increase was due to "mortgage arrears," but orally, Plaintiffs were informed by Litton agents that the increase was due to property tax payment arrears.

21. On or about January 2005, Plaintiffs requested that Defendant Litton cease contacting Plaintiffs at any other locations other than Plaintiffs' home.

22. On or about January 19, 2005, the Plaintiffs requested a written break down of the additional charges that were being assessed against them by the first Stipulation Agreement, but were refused said information.

23. Litton required Plaintiffs to send the first signed Stipulation back to the Litton via fax at an Albany, New York Kinko's Office Supply Store on or about January 19, 2005 even though the Plaintiff expressed his discomfort and dissent about that public method of communication. Litton flatly denied plaintiff's pleas for an alternative method of transmission.

5

24. Plaintiff, as a result of having his debt issues presented to Kinko's employees, felt extreme humiliation and public embarrassment, which caused his face to turn red and suffer a headache.

25. The Plaintiffs made timely loan payments until about May 2005 when the Plaintiffs anticipated on being 2 days late in making their mortgage payment. Plaintiffs informed Litton about the expected delay in payment, but instead were again directed by Minnie Rodriguez of Litton to cease payment until Plaintiffs received another stipulation agreement.  Litton then sent Plaintiffs a second written Stipulation Agreement on June 22, 2005, which required Plaintiffs' signature, without representation by an attorney, and called for an increase in defendants' monthly loan payments to $1180.18. Both written stipulations were prepared by Litton or Litton's attorneys and not by the Defendants.

26. Additionally, both above-mentioned stipulations contained the official caption of the Supreme Court of New York, County of Albany in attempts to create communication which simulates judicial process and which gave the appearance of being authorized, issued or approved by the court although there was no foreclosure proceeding instituted or filed with the court in question.

27. Both written stipulations represented this matter to be in "foreclosure litigation," but neither Litton, the mortgagee nor its attorneys had filed or served any "foreclosure litigation." Defendants Litton and Carus made false and/or misleading representations concerning pending foreclosure litigation. Said Defendants made false and/or misleading representations about the legal status of the Plaintiffs' debt. Defendants Litton and Carus also made false and/or misleading representations that

6

Plaintiffs' mortgage debt status will result in the immediate foreclosure sale of the Plaintiff's residence. Said Defendants, by their actions, disgraced the Plaintiffs. Said Defendants gave the Plaintiffs false legal papers, which falsely represented to the Plaintiffs that the documents were approved by a court of law. Defendants Litton and Carus made false representations to the Plaintiffs that the written stipulations were legal process. The Defendants Litton and Carus used false and deceptive means to collect this debt.

28. Defendants Litton and Carus sent the second stipulation agreement to Plaintiff and required Plaintiff to resend the signed Stipulation back to the Plaintiff via fax at Plaintiff Donna Cyphers' place of work at the New York Department of Motor Vehicles after the Plaintiff expressed her discomfort and dissent about that public method of transmission. Defendant Litton flatly denied plaintiff's pleas for an alternative method of transmission. Plaintiffs were also told at this time that if Plaintiffs obtained the assistance of an attorney, Defendant Litton would "foreclose on the house and put you (Plaintiffs) on the street. A lawyer cannot help anyway because this is the second default."

29. Plaintiff, as a result of having her personal debt issues disclosed to Plaintiff's fellow employees, felt extreme humiliation and public embarrassment.

30. On or about June 23rd, 2005, despite having already signed the second stipulation agreement, Litton agents called Plaintiffs to convince Plaintiffs to make payments according to the terms of the First Stipulation Agreement. The Litton agent was unresponsive to Plaintiffs attempts to explain the arrangement that had been created the day before under a second stipulation. After Plaintiffs told the Litton agent that

7

Plaintiffs wanted to talk with legal counsel about these issues, the Litton agent exclaimed to Plaintiffs "I don't give a shit what you do!" and hung up the telephone.

31. The Plaintiffs made payments on the second stipulation until about September 2005 when the Defendants were late in making their payments due to Defendants' bank account being frozen due to alleged arrears in child support. Plaintiff timely called Litton and informed Litton of the child support dispute and assured Litton that the child support issue would be resolved within a matter of days and requested permission to tender a mortgage payment as soon as Plaintiffs' account was released, but Litton flatly refused and told Plaintiff that they were going to foreclose on the mortgage. In the same month, after Plaintiffs' bank account was released, Plaintiffs then made all payments due then due to Litton.

32. The Plaintiffs received a written Reinstatement Quote from Defendant Litton concerning this first mortgage on or about October 13, 2005 with amount due in the quote of $10,006.52. The Quote contained a written notice of a "projected sale date of 5/18/2006." There was, however, no foreclosure litigation pending at that time.

33. The amount required to pay or redeem the Plaintiff's first mortgage loan debt is excessive. Litton's claimed expenses in this matter are unreasonable. Litton did not credit the Plaintiff's with unearned interest, insurance or other payments or rebates.

34. On or about November 12th, 2005 a caller named "Mike" from Litton woke Plaintiffs at 10:30PM to discuss possible resolution of the alleged default. After a few minutes of discussion, Mike told the Plaintiffs that he could do nothing and that the Plaintiffs needed to talk with Minnie Rodriguez to resolve their financial troubles. Plaintiffs asked why "Mike" called in the first place if he had no way of helping with resolution

and "Mike" refused to answer and again referred Plaintiffs to Minnie Rodriguez. Because of this action Plaintiffs were severely agitated and had trouble sleeping which has affected their job performance.

35. On or about November 23rd, 2005 Litton was put on notice of Plaintiffs' retention of legal counsel. Despite Litton's knowledge of Plaintiff's retention of Legal Counsel and repeated requests to Defendant Litton to end direct communication with Plaintiffs, Defendant Litton continues to telephone the Plaintiffs at least two times per week. The callers are never able to help Plaintiffs and always eventually refer Plaintiffs to a Minnie Rodriguez of Litton. Despite repeated attempts to contact Minnie Rodriguez, Ms. Rodriguez continuously fails to respond to Plaintiffs.

36. On or about December 15, 2005, Litton sent a second written reinstatement quote directly to Plaintiffs dated December 1, 2005 with accompanying cover letter via fax at Plaintiff's place of work at the New York Department of Motor Vehicles. The message very conspicuously expressed that it was from a debt collector and expressed a projected sale date of 6/1/2006 and reflected the total amount due of $11,780.10. Plaintiffs experienced extreme distress as Plaintiffs has repeatedly requested a termination of all direct communications. Additionally Plaintiff experienced significant public humiliation and dishonor as several of Plaintiff's co-workers handled the written message before it was finally delivered to Plaintiff.

37. A real estate mortgage foreclosure action was in fact filed against the Plaintiffs on November 14, 2005 on the first mortgage described herein in Albany County Supreme Court entitled, <u>Mortgage Electric Registration Systems Inc. v. Bruce Cyphers, Donna M. Cyphers</u>.

9

## CAUSES OF ACTION

38. For each Count in this complaint the Plaintiffs reallege and incorporate the preceding Statements of Facts.

**First Count against Litton and Carus**

39. Defendants Litton and Carus each violated the Fair Debt Collection Practices Act. Defendants' violations are many and include, but are not limited to, the following:

   a. The Defendants Litton and Carus violated 15 U.S.C. § 1692e (2)(A), (5) and (10) by misrepresenting the imminence of legal action by said Defendants when no action was filed or served.

   b. The Defendant Litton violated 15 U.S.C. § 1692e by misleading Plaintiffs by writing and by phone call into believing that Plaintiffs could cure any default through negotiation with Defendant Litton while Defendant Litton and Carus' actions show that Defendants had no intention to allow the Plaintiffs to cure.

   c. The Defendants Litton and Carus violated 15 U.S.C. § 1692e by misleading the Plaintiffs into believing that their home was already in foreclosure proceedings even though no such proceedings had been instituted.

   d. The Defendant Litton violated 15 U.S.C. § 1692e by failing to disclose that multiple communications were made to collect a debt or to obtain information about a consumer.

   e. The Defendant Carus violated 15 U.S.C. § 1692e by failing to conspicuously disclose that their initial communication was made to collect a debt or obtain information.

    f. The Defendants Litton and Carus violated 15 U.S.C. § 1692g(a)(3) by failing to give a thirty-day notice allowing dispute of the validity of the debt.

    g. The Defendant Litton's agents, employees, or attorneys violated 15 U.S.C. § 1692e by misrepresenting themselves or their actions as having been sanctioned by their attorneys.

    h. Even after the Plaintiffs had requested that the avid Defendants cease communication with the Plaintiffs, on or about November 1, 2005, the Defendant Litton violated the Truth in Lending Act, 15 U.S.C. § 1692c(c) by contacting the Plaintiff numerous, including phone calls on the following dates:

        i. Wednesday 11/23/05 9:30AM

        ii. Tuesday 11/29/05 1:30 AM,

        iii. Tuesday 11/29/05 1:00PM

        iv. Wednesday 12/7/05 9:08AM

        v. Thursday 12/22/05 11:38AM

        vi. Sunday 12/18/05 6:00 PM

    i. The Defendant Litton repeatedly violated 15 U.S C § 1692c(a)(1) and (3) by calling the Plaintiffs at inconvenient times and inconvenient places such as the Plaintiffs' work and at Plaintiffs' residence at times after 9:00 PM.

    j. The Defendant Litton and or Carus on numerous occasions violated 15 U.S C § 1692c(a)(3) and (b) by faxing communications such as Stipulation Agreements and Reinstatement quotes via public fax to Plaintiff's place of work.

    k. The Defendant Litton violated 15 U.S C § 1692d by harassing and abusing the Plaintiffs in the form of multiple phone calls made by Litton to the Plaintiffs throughout each week and by using profane, obscene, and abusive language directed to the Plaintiffs.

40. Defendants' acts were done with the purpose of harassment and coercing Plaintiff to pay the alleged debt.

**Second Count against Litton and Carus**

41. Litton and Carus violated New York General Business Law § 601 by using a communication in the form of the aforementioned Stipulation Agreements which simulate judicial process and give the appearance of being authorized, issued by or approved by a government or government agency. NY Gen Bus Law § 601 (McKinney 2006).

42. Said Stipulations contained the legal caption of the Supreme Court of New York, County of Albany which created the false impression that actual foreclosure proceedings had been instituted and filed with said court in order for Defendants Litton and Carus to induce Plaintiffs to sign said Stipulation and bind Plaintiffs into an agreement which Plaintiffs had no prior obligation to be bound to.

**Third Count against Litton and Carus**

43. Defendants Litton and Carus committed fraud by knowingly misrepresenting the truth about the immediate pendency of foreclosure litigation proceedings to induce Plaintiffs to sign the Stipulation Agreements to their detriment.

44. For example, on or about January 19th, 2005 the Defendant Litton through its agent Minnie Rodriguez and Carus through its Office Manager Mae Cummings submitted

legal papers in the form of the first said Stipulation Agreement to the Plaintiffs representing litigation when no litigation was pending. Said Defendants declared actual foreclosure sale dates when no mortgage foreclosure sale was pending, noticed or published.

45. Papers created by said Defendants claimed that the Plaintiffs were in loan default although Plaintiffs in reality were not and claimed that if Plaintiffs did not sign the papers, Defendant Litton would "continue with foreclosure proceedings." Defendants Litton and Carus also represented that the Plaintiffs were in default of tax payments although they were not.

46. Plaintiffs, for fear of foreclosure proceedings, did sign the papers substantially increasing their payments from $629 to $1,150.00.

**Fourth Count against Litton and Carus**

47. The acts of the Defendants Litton and Carus in this matter were materially deceptive or misleading, were designed to take advantage of Plaintiffs' ignorance of legal and financial procedures, and were designed to collect a debt from the Plaintiffs. The acts of the Defendants in this matter misled these Plaintiffs who were acting reasonably as consumers under the circumstances. The acts of the said Defendants violate New York General Business Law § 349. N.Y. General Business Law § 349 (Mckinney 2006).

**Fifth Count against CGA**

48. CGA is a for profit entity engaged in the business of selling and financing consumer residential real estate in the state of New York.

13

49. The acts of the Defendant CGA Properties in this matter were materially deceptive or misleading. The acts of the Defendant CGA Properties in this matter misled these Plaintiffs who were acting reasonably as consumers under the circumstances. Defendant CGA Properties engaged in a "Bait-and-Switch" act and had the Plaintiffs, without benefit of legal counsel, sign a $19,000 note and mortgage for the benefit of CGA as both seller and lender. The acts of the Defendant CGA Properties violate New York General Business Law § 349. N.Y. General Business Law § 349 (Mckinney 2006).

**Sixth Count against CGA**

50. Defendants CGA Properties through its agent on the 27th of February 2003 at the time of closing committed fraud by advising Plaintiffs that the second note and mortgage was required to receive funding for the first note and mortgage, advising Plaintiffs that the second note and mortgage would be released upon procurement of funds from the first note and mortgage, and then failing to release the second note and mortgage as promised.

51. Plaintiffs exercised due diligence in attempting to ascertain the validity of the second note and mortgage and whether it had been released.

52. The Plaintiffs are injured by the continuing existence of the second note and mortgage.

**Seventh Count**

53. Defendant CGA Properties fraudulently concealed the disclosure requirements under 15 U.S.C. § 1640(e) (2005), therefore the Truth in Lending Act rights and claims are tolled.

14

54. By failing to provide the required disclosures prior to consummation of the second mortgage loan transaction in violation of Truth in Lending Act, 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).

55. Defendant failed to clearly and unambiguously disclose in writing the violation of Truth in Lending Act, 15 U.S.C. § 1632(a) and Regulation Z §226.17(a).

## PRAYER FOR RELIEF

56. Wherefore Plaintiffs request that this court grant the following relief:

57. Award plaintiff such damages as are permitted by law, both compensatory and punitive, including $1,000 statutory damages for each violation of the Fair Debt Collections Act, Truth In Lending Act, and the New York General Business Law.

58. Award the plaintiff costs of suit and a reasonable attorney's fee;

59. Award such other and further relief as law or equity may provide including statutory, common law, punitive damages, cancellation of a the indebtedness and satisfaction of any mortgages.

_____
David L. Ganje
Attorney for Plaintiffs
Ganje Law Office
Two Tower Place
Albany, NY 12203
(518) 437-9115

15

## **VERIFICATION**

STATE OF NEW YORK )
COUNTY OF ALBANY ) ss.:

Bruce Cyphers and Donna Cyphers, being duly sworn, say that deponent is the authorized agent, that deponent has read the foregoing Verified Complaint and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

_____
Bruce Cyphers


_____
Donna Cyphers

Sworn to before me this
16 day of January, 2006.

_____
NOTARY PUBLIC

CHANA MEIRA GOLDEN
Notary Public, State of New York
No. 5031321
Qualified in Albany County
Commission Expires Aug 1, 20 06

17