UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRUCE CYPHERS and DONNA CYPHERS,

                              Plaintiffs,

        v.                                      1:06-CV-67

LITTON LOAN SERVICING, L.L.P.; CARUS &
MANNIELLO, P.C.; and CGA PROPERTIES, L.L.C.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

OFFICE OF DAVID L. GANJE                     DAVID L. GANJE, ESQ.
Attorneys for Plaintiffs                     E. LISA TANG, ESQ.
Two Tower Place
Albany, New York 12203

McNAMEE, LOCHNER, TITUS &                    KENNETH L. GELLHAUS, ESQ.
  WILLIAMS, P.C.                             MICHAEL J. HALL, ESQ.
Attorneys for Defendant Litton Loan
  Servicing, L.L.P.
677 Broadway
Albany, New York 12207-2503

ROACH & MANNIELLO, P.C.                      MICHAEL C. MANNIELLO, ESQ.
Attorneys for Defendant Carus &             EDWARD RUGINO, ESQ.
  Manniello, P.C.
115 Eileen Way, Suite 103
Syosset, New York 11791

POTT & NAVIASKY, L.L.P.                      LAURENCE NAVIASKY, ESQ.
Attorneys for Defendant CGA Properties, L.L.C.
650 Franklin Street
P.O. Box 957
Schenectady, New York 12301

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

Plaintiffs Bruce and Donna Cyphers ("plaintiffs") bring this action against defendants Litton Loan Servicing, L.L.P. ("Litton"), Carus & Manniello, P.C. ("Carus"), and CGA Properties, L.L.C. ("CGA") under various sections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-92o, New York General Business Law ("NYGBL") §§ 349 & 601, and the New York common law.

Defendant Litton moves for summary judgment under Rule 56. Plaintiffs oppose. Oral argument was heard in Utica, New York, on June 14, 2007. Decision was reserved.

### II. FACTS

In 2002, plaintiffs purchased a home and executed first and second mortgages with Fremont Investment & Loan and defendant CGA, a real estate development company, respectively. On or about June 1, 2003, defendant Litton, a loan servicing partnership, became the servicer of plaintiffs first mortgage.

Between January and December 2004, plaintiffs were late in making several loan payments to Litton. As a result, Litton referred plaintiffs' loan to outside legal counsel through an internet-based clearing house. Shortly thereafter, plaintiffs' loan was received by defendant Carus, a law firm.

In January 2005, Litton informed plaintiffs by telephone that, as a result of their failure to make timely payments, their monthly payment would increase. Litton then provided plaintiffs' information to Carus and Carus prepared a stipulation agreement outlining the terms of the payment increase. The first page of the stipulation agreement contained the following legal caption:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
------------------------------------------------------x
LITTON LOAN SERVICING LLP

Plaintiff

-against-

BRUCE CYPHERS, ET AL.
Defendants.
------------------------------------------------------x

(Tang Aff. Ex 9. at 1.)  The stipulation agreement also contained numerous references to

"foreclosure" and "foreclosure proceedings," giving the distinct impression that a foreclosure

action had been filed against plaintiffs.  Id. at 1-3.  However, at that time no such action had

been filed.  Moreover, the stipulation agreement included the following signature line:

Litton Loan Servicing, LLP

By _____

_____

Barry R. Carus
Carus & Manniello, P.C.
Attorney for Plaintiff
115 Eileen Way
Syosset, New York 11791

Id. at 3.

On January 19, 2005, plaintiffs received the stipulation agreement via facsimile from

Litton's office in Houston, Texas.  Plaintiffs signed the stipulation agreement and went to a

Kinko's Office Supply store where they sent it back to Litton via facsimile.  Plaintiffs claim that

they expressed concern to Litton over sending the stipulation agreement by facsimile from a

public location like Kinko's, but that Litton insisted they do so.

According to plaintiffs, around this time Litton had been contacting them repeatedly at their home and places of employment.  Plaintiffs claim that they asked Litton to stop contacting them at their places of employment, but that it continued to do so.

In May 2005, plaintiffs notified Litton that their next payment would be several days late.  In June 2005, Litton sent another stipulation agreement to plaintiffs which was also prepared by Carus.  Like the first stipulation agreement, the second stipulation agreement provided for an increase in plaintiffs' monthly payment and also contained an identical caption, similar references to "foreclosure," and a similar signature line.

In September 2005, plaintiffs were again late in making a payment.  As a result, Litton threatened foreclosure, issued a reinstatement quote, and provided a projected sale date of May 18, 2006.  Plaintiffs claim that throughout November they received numerous telephone calls from Litton, in some cases after nine o'clock in the evening.  Also, plaintiffs claim that Litton sent a reinstatement quote to Mrs. Cyphers's place of employment and that it was viewed by several of her coworkers.

On November 14, 2005, an affiliate of Litton, Mortgage Electronic Registration Systems Inc., filed a real estate mortgage foreclosure action against plaintiffs in Albany County Supreme Court.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991).  The court will not try issues of fact

on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986);  Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

## B.  FDCPA Claims

Litton moves for summary judgment on plaintiffs' FDCPA claims on the ground that the FDCPA is not applicable because Litton is not a "debt collector" under that Act.

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C.A. § 1692(e) (1998).  The FDCPA, among other things, prohibits debt collectors from making false or misleading representations and limits the means by which they can communicate with consumers in

connection with the collection of debts.  See 15 U.S.C.A. §§ 1692c, 1692e (1998).  Under the

FDCPA, the term "debt collector" includes, "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,

debts owed or due or asserted to be owed or due another."  Id. § 1692a(6).  However, the

term does not include "any person collecting or attempting to collect any debt owed or due or

asserted to be owed or due another to the extent such activity . . . concerns a debt which was

not in default at the time it was obtained by such person."  Id. § 1692a(6)(F).  A person

collecting or attempting to collect a debt which was not in default at the time it was obtained

by that person, but which that person believed was in default at that time, can also be a "debt

collector" under the FDCPA.  See Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 537-

40 (7th Cir. 2003).  As the Seventh Circuit noted in Schlosser, while the plain language of §

1692a(6)(F) seems to suggest that such persons are not debt collectors, when one

reads that section in conjunction with the FDCPA's stated purpose and substantive

provisions, it becomes clear that they can and should be considered "debt collectors" under

the FDCPA.  See id.

        In this case, Litton obtained plaintiffs' loan on or about June 1, 2003.  At that time,

plaintiffs' loan was not in default.  Plaintiffs contend, however, that Litton believed their loan

was in default.  In support of this contention, plaintiffs point to the following portion of Litton's

composite loan report pertaining to plaintiffs' loan:

| User Name | Type | Comment Date | Note | Reminder Date |
|-----------|------|--------------|------|---------------|
| awelch | COLLCONT | 09/19/2003 | Spoke to: BORROWER2 Default Reason: Referred Call to Another Department Reason Code: Contact Made Comment: b2 cld in with questions in regards to ins. transferred call. | |

| jmoore | CL | 09/19/2003 | b2 clid in VNAP own occp, sd she wanted to tt cs dept abt insurance, bc pymt went up. TC cll. | |
| TOPRIEN | CS | 09/19/2003 | LENDER PLACED INSURANCE INQUIRY/DISPUTE | |
| TOPRIEN | CS | 09/19/2003 | VERIFIED ADDRESS, PH#, SS#, NAME ON LOAN | |
| AGENT | FORM | 09/12/2003 | Letter generated Monthly Billing Statement | |
| N/A | CALLHIST | 09/06/2003 | Phone Num: 5183821010 Result: CMELMR | |
| N/A | CALLHIST | 09/04/2003 | Phone Num: 5183821010 Result: CMECBH | |
| AGENT | FORM | 08/15/2003 | Letter generated Monthly Billing Statement | |
| LSECHELS | SVCOTHER | 07/30/2003 | MANUAL PMT CHG/ESCR ADVANCE RECOVERY LTR SNT | |
| AGENT | FORM | 07/15/2003 | Letter generated Monthly Billing Statement | |
| N/A | CALLHIST | 07/07/2003 | Phone Num: 5183821010 Result: CMECBH | |
| ** | SVCOTHER | 07/02/2003 | FP Change:3 to  - ORDER BINDER  /NOT FORCE-PLACED POLICY#: B03062702323 VENDOR#: 50 12746 ACCRUAL DATE: 06/27/03 MATURITY DATE: 06/27/04 ACCRUAL AMT: 450.00 COVERAGE AMT:95,000,000 ANALYSIS CD:N | |
| VDRAPER | CS | 06/27/2003 | CALLER WANTS FAX # INSUR | |
| AGENT | FORM | 06/16/2003 | Letter generated Monthly Billing Statement | |
| ** | SVCOTHER | 06/03/2003 | FP Change:3 to  - ORDER BINDER  /NOT FORCE-PLACED POLICY #: B03062702323 VENDOR#: 50 12746 ACCRUAL DATE: 06/27/03 MATURITY DATE: 06/27/04 ACCRUAL AMT: 450.00 COVERAGE AMT:95,000 ANALYSIS CD:N | |
| ** | SVCOTHER | 06/02/2003 | FP Change:1 to 3 - SENT FORCE-PLACE LTR/ORDER BINDER POLICY #: LETTER TO MORTGAGOR    VENDOR #: 50 76709 ACCRUAL DATE: 05/14/02 MATURITY DATE: 05/14/03 ACCRUAL AMT: 570.00 COVERAGE AMT: 76,000 ANALYSIS CD:N | |
| LROBERTS | CS | 05/27/2003 | GENERAL COLLECTION INQUIRY H/O SENT JUNE'S PYT TO PREV SERV ON MAY23 | |
| LROBERTS | CS | 05/27/2003 | LOAN NUMBER INQUIRY | |

(Tang Aff. Ex. 2 at 18.)

Plaintiffs argue that the entry dated June 2, 2003, proves that "Litton immediately undertook a course of action typical of debt collection rather than ordinary mortgage servicing." (Pl.'s Mem. 8.)  However, plaintiffs do not explain why that entry proves what they say it proves – that Litton believed their loan was in default at that time.  It appears that that entry refers to the common mortgage lender practice of securing or least obtaining proof of homeowner's insurance on the mortgaged property upon making or obtaining the loan.  In

any event, the entry is sufficiently ambiguous such that it cannot be said to support plaintiffs' position.

Plaintiffs also point to the second entry dated September 19, 2003, in support of their contention that Litton believed their loan was in default. While that entry does indicate that Litton initiated some type of inquiry or dispute related to plaintiffs' homeowner's insurance, this occurred over three months after Litton obtained plaintiffs' loan. Thus, even if that entry did prove that Litton believed that plaintiffs' loan was in default on September 19, 2003, it certainly does not prove that it believed that on or about June 1, 2003. Thus, Litton did not believe that plaintiffs' loan was in default at that time.

Therefore, Litton's motion for summary judgment on plaintiffs' FDCPA claims against it (First Count against Litton) will be granted.

## C. **NYGBL § 601 Claim**

Plaintiffs withdrew their NYGBL § 601 claim at oral argument. Therefore, that claim will be dismissed.

## D. **NYGBL § 349 Claim**

Litton moves for summary judgment on plaintiffs' NYGBL § 349 claim on the ground that they have failed to allege that Litton's conduct or practices had a broader impact on consumers at large.

NYGBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a) (McKinney 2004). "[S]ection 349 is directed at wrongs against the consuming public." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 24 (1995). Thus, a plaintiff asserting a

claim under § 349 "must demonstrate that the [defendant's] acts or practices have a broader impact on consumers at large." Id. at 25. "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Id.

In this case, plaintiffs allege the following with respect to their NYGBL § 349 claim:

> The acts of the Defendants Litton and Carus in this matter were materially deceptive or misleading, were designed to take advantage of Plaintiffs' ignorance of legal and financial procedures, and were designed to collect a debt from the Plaintiffs. The acts of the Defendants in this matter misled these Plaintiffs who were acting reasonably as consumers under the circumstances. The acts of the said Defendants violate New York General Business Law § 349.

(Compl. ¶ 47 (emphasis added).) Thus, plaintiffs have sufficiently alleged, albeit in an indirect and rather inartful manner, that the acts and practices of which they complain have had a broader impact on consumers at large.

Moreover, the evidence shows that Litton's acts or practices have a broader impact on consumers at large. Litton is a large operation "in the business of servicing loans, including, but not limited to, residential mortgage loans." (Wyatt Aff. ¶ 3.) Litton obtained plaintiffs' loan, and an unspecified number of others, as part of a Pooling and Servicing Agreement between it, Financial Asset Securities Corp., and Deutsche Bank National Trust Company. The evidence also shows that there was nothing unique about Litton's relationship with plaintiffs or Litton's conduct and practices towards plaintiffs. In other words, it reasonably can be inferred from the evidence that Litton's conduct and practices toward plaintiffs reflect its conduct and practices toward consumers generally. Thus, there are at least questions of fact as to whether Litton's acts and practices in this case have a broader impact on consumers at large.

Therefore, Litton's motion for summary judgment on plaintiffs' NYBGL § 349 claim will be denied.

### E. Fraud Claim

Finally, Litton moves for summary judgment on plaintiffs' fraud claim on the grounds that they have not alleged fraud with sufficient particularity, and any fraud was committed by Carus, an independent contractor.

"The elements of a cause of action for fraud are a representation concerning a material fact, falsity of that representation, scienter, reliance and damages." Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 245 A.D.2d 96, 98 (N.Y. App. Div. 1st Dep't 1997). Federal Rule of Civil Procedure 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

In this case, plaintiffs have alleged and demonstrated that Litton sent to them two stipulation agreements in January and June 2005, respectively, which contained legal captions and language which would have led a reasonable person to believe that a foreclosure action had been initiated in state court. Plaintiffs have also alleged and demonstrated that a foreclosure action was not initiated until November 2005. Moreover, plaintiffs have alleged that Litton made this representation knowingly and intentionally and that they relied on it in agreeing to monthly payment increases which, in turn, resulted in additional late payments and foreclosure. Thus, plaintiffs have met the pleading requirements of Rule 9(b).

Moreover, plaintiffs have raised questions of fact as to whether Carus truly was an independent contractor and therefore Litton would not be liable for any fraud committed by

Carus, and/or whether Litton itself also committed fraud. The evidence shows that Litton was at least somewhat involved in the preparation of the stipulation agreements, viewed the agreements, and sent them to plaintiffs from its office in Houston, Texas. Litton's argument that it reasonably assumed that Carus's work-product did not contain misrepresentations is belied by the fact that it viewed the stipulation agreements which contained legal captions on the front. Certainly Litton was aware that foreclosure proceedings had not yet been filed; however, they proceeded to send the agreements to plaintiffs.

Therefore, Litton's motion for summary judgment on plaintiffs' fraud claim will be denied.

## IV. CONCLUSION

Accordingly, it is

ORDERED that:

1. Litton's motion for summary judgment is GRANTED in part and DENIED in part;

2. Litton's motion for summary judgment on plaintiffs' FDCPA and NYGBL § 601 claims against it (First and Second Counts against Litton) is GRANTED;

3. Plaintiffs' FDCPA and NYGBL § 601 claims against Litton are DISMISSED; and

4. Litton's motion for summary judgment is otherwise DENIED.

IT IS SO ORDERED.

United States District Judge

Dated:    August 27, 2007
          Utica, New York.